UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEHU HAND,

    *Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE,

    *Defendant*.

Civil Action No. 20-3690 (TJK)

## MEMORANDUM OPINION

Jehu Hand submitted a Freedom of Information Act request to the Department of Justice for records related to a retired agent's contacts with its employees. Rather than provide the records, DOJ issued a *Glomar* response—declining to confirm or deny their existence. Hand sued. DOJ and Hand now each move for summary judgment. Because DOJ has justified its *Glomar* response, the Court will grant DOJ's motion and deny Hand's.

**I.  Background**

In 2020, Hand sent a letter to DOJ's Justice Management Division ("JMD") to request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552:

1. All email, mail, telephone or other evidences of contact between Mark Viau and any employee of the Department of Justice or any agency thereunder, from January 1, 2011 to the present, but excluding any contact strictly related to his personnel matters (pension, or financial matters), including without limitation Bryan McKay, Eric Forni, Andrew Palid or Vasilli Thomadakis.

2. The identity and business address of any individual employee with whom the contact referenced in item 1 is provided.

3. Any document, including emails or other documents in electronic format, comprising any information or including any information regarding the undersigned from Mark Viau or any person known to be representing him, generated at any time from January 1, 2011 to the present, including Form 302s.

ECF No. 18-2 at 29.¹ In his request, Hand represented that Viau was a former FBI agent who "threatened the use of Federal government resources . . . in the collection of a debt" owed by Hand's former client. Hand Decl. at 72 (Ex. 9); Seidel Decl. at 29 (Ex. C). The basis for this allegation, Hand says, is a letter he received from Viau in September 2013. Hand Decl. ¶ 2. In it, Viau said that if Hand's client did not pay the debt, Viau would "muster by reporting and recruiting the full force, effect and exhaustible resources of the Federal Government against . . . [Hand]" and that Viau's "tenure in Federal Law Enforcement has provided [him] with the contacts in the Federal and State Systems to put this matter on the fast track." *Id.* at 9 (Ex. 2). Hand was later prosecuted and convicted for securities fraud, but the discovery in that case did not reference Viau. *Id.* ¶¶ 5–6.

JMD forwarded Hand's FOIA request to the FBI. SUMF ¶ 1. On March 13, 2020, the FBI issued a so-called *Glomar* response, informing Hand that it "will neither confirm nor deny the existence of such records pursuant to FOIA Exemptions (b)(6) and (b)(7)(C)" under 5 U.S.C. § 552. SUMF ¶ 3; Seidel Decl. at 19 (Ex. B).²

Hand appealed to DOJ's Office of Information Policy ("OIP"). SUMF ¶¶ 5–9; Seidel Decl. at 25 (Ex. C). In doing so, he clarified that he sought only communication records "between Mr.

---

¹ To resolve the pending motions, the Court relies in part on the declarations (and attached exhibits) of Michael Seidel of the Federal Bureau of Investigation ("FBI"), provided in support of DOJ's *original* motion for summary judgment, ECF No. 18-2 ("Seidel Decl."), and provided in support of its *renewed* motion for summary judgment, ECF No. 31-2 ("Suppl. Seidel Decl."); and Hand, provided in support of his opposition and cross-motion for summary judgment, ECF No. 33-2 ("Hand Decl."). *See also* ECF No. 31 at 9–10 (DOJ incorporating by reference materials from its original motion for summary judgment, ECF No. 18). The Court also relies on DOJ's Statement of Undisputed Material Facts, ECF No. 31-1 ("SUMF").

² The *Glomar* name comes from the Central Intelligence Agency's refusal to confirm or deny the existence of records of a ship, *Hughes Glomar Explorer*, in *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976). *See* SUMF ¶ 2 n.3 (citing *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).

Viau and any persons at the Department of Justice regarding [himself]," not "any personnel or medical files relating to the FBI agent Mark Viau."  SUMF ¶ 6; Hand Decl. at 79 (Ex. 13).

So understood, OIP affirmed FBI's *Glomar* response.  SUMF ¶ 10.  OIP told Hand that "[c]onfirming or denying the existence of such records, including law enforcement records, concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.*; Seidel Decl. at 35 (Ex. E) (citing 5 U.S.C. § 552(b)(6), 7(C)).  OIP also expressed that it was "reasonably foreseeable that confirming or denying the existence of such records would harm the interests protected by these exemptions."  SUMF ¶ 10; Hand Decl. at 81 (Ex. 14).

Hand then sued, seeking material "to exonerate himself in the criminal case against him" for securities fraud.  ECF No. 1 ("Compl.") at 7.  Later, DOJ moved, and Hand cross-moved, for summary judgment.  ECF Nos. 18, 22.  The Court denied those motions without prejudice, finding that the affidavit that DOJ "submitted [did] not contain sufficient specificity of detail to carry Defendant's burden to make the requisite threshold showing" for a *Glomar* response based on Exemption 7(C).  Min. Order of Feb. 16, 2022.  "In particular, the affidavit never even clearly assert[ed], let alone specifically detail[ed], that all responsive records in Defendant's possession, assuming they exist at all, 'would have been compiled for a law enforcement purpose,'" as required for DOJ's *Glomar* response to be appropriate.  *Id.* (citation omitted).  Thus, the Court provided DOJ the "opportunity either to supplement its affidavit in support of its *Glomar* response or to proceed otherwise in a manner consistent with its obligations under FOIA."  *Id.*

DOJ has filed a renewed motion for summary judgment with a supplemental affidavit.  *See* ECF No. 31; Suppl. Seidel Decl.  Hand, once again, opposes that motion and cross-moves for summary judgment.  ECF Nos. 33–34.

**II.     Legal Standard**

To prevail on a motion for summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).[3]

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365–66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A). Thus, a FOIA defendant is entitled to summary judgment if it shows that there is no genuine dispute "that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *See Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980) (quoting *Nat'l Cable Television Ass'n, Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). The "vast majority of FOIA cases" are decided on motions for summary judgment. *See Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

---

[3] "Where the nonmoving party is proceeding *pro se*, courts in this jurisdiction will construe the non-moving party's filings liberally." *Cunningham v. DOJ*, 40 F. Supp. 3d 71, 82 (D.D.C. 2014), *aff'd*, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014). But in this case, although Hand proceeds pro se, he is also an attorney. Hand Decl. ¶ 2; Compl. at 1–2. And when a pro se plaintiff is an attorney "courts do not 'automatically' apply 'the very liberal standards afforded to a non-attorney *pro se* plaintiff.'" *Penkoski v. Bowser*, 548 F. Supp. 3d 12, 19 (D.D.C. 2021) (citations omitted). Thus, the Court does not do so here. Further, "[a]ny leeway does not extend to the *evidence* required at summary judgment, as courts hold *pro se* plaintiffs to the same evidentiary burdens and presumptions as represented plaintiffs." *Id.*

An agency "may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982). In that circumstance, a *Glomar* response is "proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf*, 473 F.3d at 374. To determine whether a *Glomar* response "fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Id.* An agency issuing a *Glomar* response must explain in as much detail as possible why it cannot confirm or deny the existence of certain records or categories of records, which it may seek to do by affidavit. *James Madison Project v. DOJ*, 208 F. Supp. 3d 265, 283 (D.D.C. 2016). If a *Glomar* response is justified, "the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014).

**III.     Analysis**

DOJ justifies its Glomar response by invoking Exemption 7(C), which shields from disclosure records "compiled for law enforcement purposes, but only to the extent that [such] production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Court finds that DOJ has made the requisite threshold showing that any records requested by Hand, if they existed, would have been compiled for a law enforcement purpose. And it holds that there is no public interest that justifies the invasion of the privacy interests implicated by the request. Because Hand's other arguments miss the mark as well, DOJ's *Glomar* response was proper.[4]

---

[4] DOJ also relies on Exemption 6, which permits agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of

### A. Hand Requests Records That Would Have Been Compiled for a Law Enforcement Purpose

To "withhold documents pursuant to Exemption 7(C), the agency must make a threshold showing that the 'the records were compiled for a law enforcement purpose.'" *Lindsey v. FBI*, 490 F. Supp. 3d 1, 16 (D.D.C. 2020) (citation omitted). "The term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014). It reaches not only "investigating and prosecuting individuals *after* a violation of the law" but also "proactive steps designed to prevent criminal activity and to maintain security." *Id.* (citation omitted). That said, "FBI records are not law enforcement records simply by virtue of the function that the FBI serves." *Vymetalik v. FBI*, 785 F.2d 1090, 1095 (D.C. Cir. 1986). And the term "'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Pub. Emps. for Env't Resp.*, 740 F.3d at 203 (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 155 (1989)). Finally, a court's review of a law enforcement agency's "assertion that documents were compiled for a law enforcement purpose" is "necessarily deferential" though "not vacuous." *Pinson v. DOJ*, 245 F. Supp. 3d 225, 249 (D.D.C. 2017) (citations omitted).

DOJ has satisfied this threshold showing. The FBI determined that any responsive records, should they exist, would have been compiled for a law enforcement purpose and thus fall within Exemption 7(C)'s ambit. In the affidavit DOJ provided in support of its original summary-

---

personal privacy." 5 U.S.C. § 552(b)(6). But the "standard for evaluating a threatened invasion of privacy interests" under Exemption 7(C), "is somewhat broader than the standard" under Exemption 6. *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). So, if the requested information "was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C)," then the Court has "no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

judgment motion, ECF No. 18, DOJ's declarant said that if "any responsive investigative records" existed they would "readily meet the threshold requirement" of Exemption 7(C), Seidel Decl. ¶ 28. The Court found this answer wanting, however, as the declarant failed to explain that "*all* responsive records in [DOJ's] possession . . . are such investigative records" that "would have been compiled for a law enforcement purpose." Min. Order of Feb. 22, 2022 (citation omitted).

DOJ's declarant has since clarified that all responsive records, if they existed, would have been compiled only for investigative purposes. He explains that the FBI read Hand's request "liberally" to "to seek records concerning communications between Mr. Viau and DOJ personnel concerning the criminal investigation and prosecution of Plaintiff." Suppl. Seidel Decl. ¶¶ 8–9 (reading Hand's request to *exclude* Viau's communications with DOJ unrelated to Hand). So understood, the declarant determined that "the records [Hand] seeks would fall within the ambit of records compiled for law enforcement purposes." *Id.* He thus concludes "the requested records, should they exist, would have been collected and maintained by the FBI as part of its law enforcement mission." *Id.* at 6. And as "[t]he FBI is a law enforcement agency," *Reps. Comm. for Freedom of Press v. FBI*, 369 F. Supp. 3d 212, 220 (D.D.C. 2019); Suppl. Seidel Decl. ¶ 10; SUMF ¶ 28; Seidel Decl. ¶ 28, "[t]his assertion is deserving of deference," *Lindsey*, 490 F. Supp. 3d at 17. *See also Pinson*, 245 F. Supp. 3d at 249.

Hand's representations only reinforce this understanding of his request. In his administrative appeal of FBI's *Glomar* response to OIP, Hand said his request has "nothing to with Mr. Viau's personal affairs nor his employment relationship (or his former employment relationship) with the Department of Justice." Hand Decl. at 79 (Ex. 13). "Rather," he sought "information related to Mr. Viau's illegal attempt to 'muster by reporting and recruiting the full force, effect and inexhaustible resources of the Federal Government against [Jehu Hand]' in order to collect on

a personal debt allegedly owed to him." *Id.* That is, he sought information only "regarding [*himself*]." *Id.* (emphasis added). In his opposition, too, Hand confirms his request "expressly disavowed any interest in Viau's personnel or medical records, but sought information regarding communications between (a) Viau and specified individuals on the investigation and prosecution team *against Hand in the criminal case*, and (b) communications between Viau and the Department or documents authored by him or on his behalf, *to the extent that they relate to Hand*." ECF No. 33-1 at 11–12 (emphases added).

Attempting to put daylight between categories (a) and (b), Hand says his "FOIA request had nothing to do with Plaintiff's own criminal case, but, rather, Viau's 'contact with any persons at the Department of Justice in furtherance of his criminal enterprise.'" ECF No. 33-1 at 18. The problem for Hand is that these two categories collapse into one. The "criminal enterprise," in Hand's own telling, is Viau's alleged efforts to "recruit[] the full force, effect and inexhaustible resources of the Federal Government against [Hand]"—i.e., Viau's efforts, if any, to encourage the federal government to investigate and prosecute Hand. *See* Compl. at 2. Thus, any communications between Viau and DOJ that "relate to Hand" under category (b) would necessarily also be about "Hand in the criminal case" under category (a). *See* ECF No. 33-1 at 11–12. So concludes DOJ: "the *only* records that could be potentially responsive to [Hand's] request are communications between Mr. Viau and other Department of Justice employees relating *specifically to* [*Hand's*] *criminal investigation and prosecution*, which [DOJ's declarant] explained . . . would be considered law enforcement records, justifying their withholding under Exemption 7(C)." ECF No. 31 at 20 n.8 (emphases added). DOJ's declarant similarly says that if the FBI possesses any records requested by Hand, they would "concern[] the criminal investigation and prosecution of [Hand]." Suppl. Seidel Decl. ¶ 8. Again, that view warrants deference, and Hand presents no

8

evidence to the contrary. Thus, DOJ has satisfied its threshold burden to show that the records Hand requests, should any exist, would have been compiled for a law enforcement purpose.

### B. No Public Interest Supports Invading the Privacy Interests Implicated by Hand's Request

Next, the Court turns to Exemption 7(C)'s requirement that "disclosure regarding the existence or non-existence of records 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Lindsey*, 490 F. Supp. 3d at 17 (quoting 5 U.S.C. § 552(b)(7)(C)). To do so, the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quotation omitted) (noting this balancing inquiry applies for both Exemptions 6 and 7(C)).

The privacy interests here are plain. Hand seeks purported communications from Viau, a third party. Hand has provided no third-party privacy waiver from (or proof of death of) Viau. SUMF ¶ 36; Seidel Decl. ¶ 29; *Harrison v. Fed. Bureau of Prisons*, 611 F. Supp. 2d 54, 66 (D.D.C. 2009) (The 6 and 7(C) "personal privacy exemptions may be overcome by a waiver signed by the third person whose privacy interest would be affected by the disclosure."); *see also* 28 C.F.R. § 16.3(a)(4). Moreover, the D.C. Circuit has held that "not only the targets of law-enforcement investigations, but also 'witnesses, informants, and . . . investigating agents' have a 'substantial interest' in ensuring that their relationship to the investigations 'remains secret.'" *Roth*, 642 F.3d

at 1174 (quoting *Schrecker v. DOJ*, 349 F.3d 657, 666 (D.C. Cir.2003)).[5] Thus, DOJ has adequately demonstrated that Hand has requested records about his own criminal prosecution that, if their existence is disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Hand argues that the countervailing public interest lies in uncovering government corruption. ECF No. 33-1 at 12. But he needs more than a hunch for those interests to register on the scale. As the Supreme Court instructs:

> [W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).

Thus, a plaintiff challenging a *Glomar* response based on "[a]llegations of government misconduct" must offer a "meaningful evidentiary showing" because such allegations "are easy to allege and hard to disprove." *Favish*, 541 U.S. at 175 (internal quotation marks and citation omitted). Specifically, she must offer "compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and that "access to the names of private individuals appearing in the agency's law enforcement files is necessary to confirm or refute that evidence." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205–06 (D.C. Cir. 1991). "Only when the FOIA requester has

---

[5] Hand's request also suggests that Assistant United States Attorneys "Bryan McKay, Eric Forni, Andrew Palid or Vasilli Thomadakis," whose relationship to Hand's prosecution is presumably public, might have received communications from Viau. Hand Decl. at 72 (Ex. 9). But, as described above, Viau would still maintain an independent privacy interest in these communications. And in any event, the Court must also consider the privacy interests in these DOJ employees as well. *See Jefferson v. DOJ, Off. of Pro. Resp.*, 284 F.3d 172, 180 (D.C. Cir. 2002) (considering an "AUSA's privacy interests" under Exemption 7(C)). As with Viau, Hand did not provide DOJ with privacy waivers for these individuals. Suppl. Seidel Decl. ¶ 19.

produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Favish,* 541 U.S. at 174–75.  Without any such evidence, "there is no reason to believe that the incremental public interest in such information would ever be significant," and the information is exempt from disclosure.  *SafeCard Servs.*, 926 F.2d at 1206.

Hand has no such evidence.  His "litany of allegedly suspicious circumstances [that] lacks any substantiation" does "not come close to meeting the demanding *Favish* standard for challenging the FBI's invocation of FOIA Exemption 7(C)." *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011).  Hand points to Viau's letter, in which Viau references his intent to "us[e] the FBI and the Department to collect a debt owed to him."  ECF No. 33-1 at 12; *see also* Hand Decl. at 9 (Ex. 2).  But that letter—whatever it might say about Viau, who did not then work for the FBI—is hardly evidence of wrongdoing *on the government's part*.  Ultimately, Hand has no evidence—let alone compelling evidence—that anyone at DOJ acted improperly.[6]

Moreover, disclosure of third-party information is disfavored particularly "when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution."  *Blackwell*, 646 F.3d at 41.  Hand concedes that his ultimate goal in seeking the requested information is to "exonerate himself in the criminal case."  Compl. at 7.  But his personal stake in the requested information does not count as a public interest.  *See, e.g.*, *Roth*, 642 F.3d at 1177 ("Although [Roth's client] certainly has an intense personal interest in obtaining whatever information might bolster the *Brady* claims he is presenting in his collateral attacks on his conviction, [Roth's client's] personal stake in the release of the requested information is

---

[6] Indeed, "[a]fter reviewing the approximately 500,000 pages of discovery provided by the government in [his] criminal case, [Hand] did not find *any* document referencing [the debtor] or Mr. Viau."  Hand Decl. ¶ 5 (emphasis added).

11

'irrelevant' to the balancing of public and third-party privacy interests required by Exemption 7(C)." (quoting *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000))); *Willis v. DOJ*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008) ("[I]t is well established that an individual's personal interest in challenging his criminal conviction is not a public interest under FOIA because it 'reveals little or nothing about an agency's own conduct.'" (quoting *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. at 773)).

For these reasons, the Court finds that DOJ was justified in issuing a *Glomar* response to avoid an unwarranted invasion of the third-party privacy interests at issue.

### C.     Hand Does Not Challenge DOJ's Referral to the FBI

Hand also faults DOJ for addressing in its renewed summary-judgment motion only "the records in possession of the FBI" because he "addressed his FOIA request to the entire Department of Justice." ECF No. 33-1 at 19. But this argument, apparently challenging the adequacy of DOJ's search, is not properly before the Court. Nowhere in the complaint or otherwise does Hand challenge DOJ's decision to refer his requests to the FBI. *See* Seidel Decl. at 24–26 (Ex. C), 52–54 (Ex. K). To the contrary, the complaint alleges that "his appeal responses to the Defendant"—that is, his appeals to OIP—"*fully* set forth the justification for the [judicial] relief sought." Compl. at 7 (emphasis added). And in his OIP appeals, like here, Hand challenged only DOJ's *Glomar* response. In the end, Hand "cannot use summary judgment briefing to press [a] claim[] not raised in [his] complaint[]." *Weatherspoon v. Azar*, 380 F. Supp. 3d 65, 75 (D.D.C. 2019); *Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*, 531 F. Supp. 3d 153, 175 (D.D.C. 2021) ("The typical course is for a court to reject any novel allegations and legal theories introduced in briefing and grant summary judgment for the opposing party on those issues."), *aff'd sub nom. Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*, 31 F.4th 800 (D.C. Cir. 2022).

Thus, the Court need not address whether it was proper for DOJ to refer Hand's request to the FBI.[7]

## IV.     Conclusion

For all these reasons, the Court will grant DOJ's renewed motion for summary judgment and deny Hand's. A separate order will issue.

Date: March 29, 2023

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

---

[7] Additionally, in a single sentence, Hand argues DOJ's *Glomar* response "with respect to the identity of the named recipients was inappropriate" because "they"—presumably the prosecutors in his criminal case—"are already publicly known." ECF No. 33-1 at 18. But to support that theory, Hand has "the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Wolf*, 473 F.3d at 378 (citation omitted). His conclusory assertion that the identities of the individuals that are the subject of his request are public in some way does not come close to meeting his burden.